**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Berdie Johnson, | No. CV-17-08218-PCT-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| United States of America, et al., | |
| Defendants. | |

Before the Court is Defendants' motion for summary judgment, which is fully briefed. (Docs. 99, 108, 111.) The Court will grant Defendants' motion in part and deny it in part for the following reasons.[1]

**I. Background**

This case stems from injuries suffered by Berdie Johnson allegedly due to a gall bladder excision surgery performed by Dr. James Langevin and Dr. Moaz Abulfaraj (the "Doctors") at the Tsehootsoi Medical Center ("TMC") in Fort Defiance, Arizona on December 28, 2015. (Doc. 68.) The Doctors provided services at TMC pursuant to Provider Service Agreements with Staff Care, Inc. ("Staff Care") in which they agreed to serve temporarily as *locum tenens* physicians. During the surgery, the Doctors discovered and repaired two enterotomies—cuts caused during surgery—within Ms. Johnson's bowel.

---

[1] Defendants' request for oral argument is denied because the issues are adequately briefed and oral argument will not help the Court resolve the motion. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f); *Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

Post-operation, Ms. Johnson remained at TMC to recover. On January 1, 2016, TMC nursing staff noted that Ms. Johnson was experiencing drainage from the incision site. (Doc. 108-1 at 61.) Based on that development, TMC transferred Ms. Johnson to another facility on January 2, 2016, where she underwent emergency surgery the same day. (Doc. 99-1 at 17, 20; Doc. 108-1 at 62.) During this surgery, Dr. Lisa Balduf discovered a third through-and-through enterotomy in Ms. Johnson's small intestine, which she opined had been created during the gall bladder excision surgery but missed by the Doctors. (Doc. 99-1 at 19; Doc. 108-1 at 67-69.)

On October 25, 2017, Ms. Johnson filed suit against, *inter alia*, the Doctors and Staff Care. Ms. Johnson's operative complaint asserts claims against the Doctors for medical negligence and failure to obtain Ms. Johnson's informed consent prior to surgery and seeks to hold Staff Care vicariously liable for the Doctors' malfeasance on a theory of *respondeat superior*. (Doc. 68.) On January 12, 2021, Defendants moved for summary judgment on all of Ms. Johnson's claims. Defendants' motion is now ripe.

**II. Discussion**

   **A. Vicarious Liability**

Staff Care seeks summary judgment on Ms. Johnson's vicarious liability claim, arguing that *respondeat superior* liability cannot attach because the evidence indisputably shows that the Doctors were independent contractors pursuant to their Provider Service Agreements. (Doc. 99-1 at 23.) With some exceptions, an alleged employer cannot be held vicariously liable for the negligence of an independent contractor. *Pride of San Juan, Inc. v. Pratt*, 212 P.3d 29, 31 (Ariz. Ct. App. 2009). Ms. Johnson has neither disputed the Doctors' independent contractor status nor suggested than an exception to the general independent contractor rule applies such that Staff Care may be held vicariously liable for the Doctors' actions. The Court will therefore grant summary judgment to Staff Care on Ms. Johnson's vicarious liability claim.

   **B. Informed Consent**

In her complaint, Ms. Johnson alleges that, prior to surgery, the Doctors did not

obtain her informed consent. (Doc. 68 at 5, 9-11.) However, Ms. Johnson has produced no evidence that the Doctors failed to meet the standards necessary such that Ms. Johnson could not and did not provide informed consent prior to her surgery. Rather, she merely notes she felt pressured to proceed with the December operation date, especially because Dr. Langevin informed her employer that "otherwise she will need to be rebooked and possibly to have an open cholecystectomy." (Doc. 108 at 4; Doc. 108-1 at 65.) Ms. Johnson has not explained how Dr. Langevin's advice, or any other circumstances, rendered her acquiescence to care uninformed or nonconsensual. Ms. Johnson has therefore failed to create a genuine dispute of material fact as to whether she gave informed consent prior to surgery and the Court will grant summary judgment to the Doctors on this claim.

**C. Negligence**

Defendants contend that summary judgment should be granted in their favor on Ms. Johnson's negligence claim because she has failed to produce evidence that creates a genuine dispute of material fact as to whether the Doctors breached their duty to Ms. Johnson performing the gall bladder excision surgery, thereby causing her harm. To the contrary, Ms. Johnson's expert, Dr. Thomas Gouge, opined that the standard of care obligated the Doctors to "run the bowel"[2] prior to closing Ms. Johnson's abdomen, the Doctors failed to run the bowel, and such failure caused the Doctors to miss the third enterotomy, leading Ms. Johnson to suffer infection and extensive hospitalization. In response, Defendants argue that Dr. Gouge's opinion is insufficient to create a genuine dispute of material fact as to breach for three reasons.[3]

First, Defendants suggest Dr. Gouge's opinion that the Doctors did not run the bowel is improperly speculative because it is based solely on the fact that the Doctors' operative note lacks a notation that they did so. To the contrary, Dr. Gouge's opinion does

---

[2] A bowel run is a systematic examination of the entire small intestine, which is performed by holding the bowel between one's fingers and examining both sides. (Doc. 99-1 at 44.)

[3] Defendants have not filed a Daubert motion seeking to exclude Dr. Gouge's opinion.

not stem only from guesswork or his review of the operative note in a vacuum; it relies on his knowledge and experience in the field. Fed. R. Evid. 703. Particularly, while Dr. Gouge opined that the standard of care does not require surgeons to include in their operative report a notation that they ran the bowel, he explained that the Doctors' failure to do so strongly indicates that they did not, in fact, run the bowel, explaining,

> [i]t would be unusual in my experience with this type of situation for a surgeon not to describe having [run the bowel], having found two bowel injuries in a case where there really wasn't reason to suspect those. So it's beyond just the dictum that if you didn't write it down, it didn't happen.

(Doc. 99-1 at 44.) While Defendants make much ado of Dr. Gouge's admission that—had the Doctors included a notation that they ran the bowel in their operative note—he would have concluded that the Doctors had, in fact, run the bowel and had met the standard of care, the Doctors did not include such a notation, and Dr. Gouge persists in opining that the bowel-running was not performed. Defendants' first argument is rejected.

Second, Defendants argue that Dr. Gouge's opinions do not support of breach finding, because Dr. Gouge agreed that a hypothetical surgeon could run the bowel in a "diligent and systemic fashion" (Doc. 99-1 at 45)—as required by the standard of care— yet miss an enterotomy under some circumstances, because the standard of care does not require the discovery of all enterotomies. However, looking to this particular injury and this particular patient—Dr. Gouge nevertheless opined that the Doctors did not run the bowel, and therefore breached the standard of care, because had the Doctors run the bowel, "there's absolutely no way that they could have missed this injury." (*Id.* at 44-45.) Defendants' second argument is rejected.

Third, Defendants argue that Dr. Gouge's opinion that the Doctors did not run the bowel lacks proper foundation, because he did not consider Dr. Albufaraj's testimony that the Doctors, in fact, ran the bowel. (Doc. 99-1 at 35.) Defendants provide no authority in support of the proposition that Dr. Gouge was required to review the Doctors' deposition transcripts before rendering an opinion. Here, Dr. Gouge based his opinion on his review of operative note and his knowledge of standard practice. Fed. R. Evid. 703. And, looking

to Dr. Gouge's evidence, a reasonable juror could conclude that Dr. Albufaraj's testimony was not credible, determine that the Doctors did not run the bowel, and decide that the Doctors breached the standard of care. Defendants' third argument is therefore rejected and the Court will deny Defendants' motion as to Ms. Johnson's negligence claim. Accordingly,

**IT IS ORDERED** that Defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART** as described herein.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to enter judgment in favor of Staff Care and terminate it as a party.

Dated this 6th day of July, 2021.

Douglas L. Rayes
United States District Judge